**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION AT JACKSON**

FILED BY ___ ___ D.C.

01 JAN 30 PM 2:

**FAYE NORED and**
**CYNDI SHAFER,**
     **Plaintiffs,**

     **v.**

**WEAKLEY COUNTY EMERGENCY**
**COMMUNICATIONS DISTRICT,**
     **Defendant.**

**UNITED STATES OF AMERICA,**
     **Plaintiff-Intervenor,**

**v.**

**STATE OF TENNESSEE, WEAKLEY COUNTY,**
**and WEAKLEY COUNTY EMERGENCY**
**COMMUNCATIONS DISTRICT,**
     **Defendants.**

**CIVIL ACTION No. 1:98-1357**
**JUDGE JAMES D. TODD**

**CONSENT ORDER AND FINAL JUDGMENT**
**BETWEEN UNITED STATES OF AMERICA; FAYE NORED AND CYNDI SHAFER;**
**WEAKLEY COUNTY EMERGENCY COMMUNICATIONS DISTRICT;**
**AND WEAKLEY COUNTY**

### Jurisdiction

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1345, and 42

U.S.C. §12117(a) and 42 U.S.C. §12133.

### Background

    A.    **Parties.** The parties (hereinafter and collectively, the "Parties") to this Consent

Order and Final Judgment ("Consent Order") are the following:

Page 1 of 28

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on _____ 01-31-01

44

(1)      Plaintiff-Intervenor United States of America (the "United States"),

represented by the United States Department of Justice (the "Department," hereinafter used

interchangeably with the "United States"), which is the designated federal agency responsible for

administering and enforcing Titles I and II of the Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12101, et seq., and its implementing regulations, 29 C.F.R. Part 1630 and 28 C.F.R.

Part 35 (hereinafter and collectively, the "ADA"), with respect to public entities and employers;

(2)      Plaintiffs Faye Nored and Cyndi Shafer (hereinafter and collectively, the

"Private Plaintiffs"), private individuals and former employees of Weakley County Emergency

Communications District;

(3)      Defendant Weakley County Emergency Communications District, a local

governmental entity that provides emergency 9-1-1 dispatch services within Weakley County,

and which is a "public entity" within the meaning of 42 U.S.C. § 12115(1) and an "employer"

within the meaning of 42 U.S.C. § 12111(5); and

(4)      Defendant Weakley County, a county government, which is a "public

entity" within the meaning of 42 U.S.C. § 12115(1) and an "employer" within the meaning of 42

U.S.C. § 12111(5).

B.      **Summary of Litigation.**  This litigation was brought by the Private Plaintiffs and

the United States (hereinafter and collectively, "Plaintiffs") against Weakley County Emergency

Communications District and Weakley County (hereinafter, collectively and severally,

"Defendants")[1] to enforce Titles I and II of the ADA.  Title I of the ADA prohibits employment

---

[1]  The State of Tennessee, which is named as an additional defendant in the United
States' complaint, is not a party to this Consent Order.  Consequently, the term Defendants, as
used herein, does not refer to the State of Tennessee.

discrimination on the basis of disability by private and public employers.  42 U.S.C. § 12112(a).

Title II of the ADA prohibits discrimination on the basis of disability by public entities,

including employment discrimination.  42 U.S.C. § 12132.

The State of Tennessee has enacted provisions (hereinafter and collectively, "Statutory

Provisions") in five separate statutes (hereinafter and collectively, "State Statutes") that require

persons employed in any of five law enforcement positions in the State (including public safety

dispatcher, police officer, sheriff, correctional officer, and youth services officer) to "be free of

all apparent mental disorders."  The Statutory Provisions also require that persons be certified as

meeting this requirement by a qualified professional in the psychiatric or psychological fields.

In July 1997, when the Statutory Provision in Tenn. Code Ann. §7-86-201 (relating to

public safety dispatchers) became effective, the Private Plaintiffs had been employed for several

years as emergency 9-1-1 dispatchers with Weakley County Emergency Communications

District.  Along with the other dispatchers employed at that time, the Private Plaintiffs were

subjected to psychological evaluation in order to determine whether they had any "mental

disorder" that would disqualify them from employment.  On the basis of such evaluation, Faye

Nored was diagnosed as being subject to "emotional instability," and Cyndi Shafer was

diagnosed as being "overly reactive" and at risk of "impulse control difficulties."  Based upon

these diagnoses, Weakley County Emergency Communications District decided to effectively

terminate their employment pursuant to the Statutory Provision because they were not free of all

apparent mental disorders.

In December 1998, the Private Plaintiffs instituted this suit against Weakley County

Emergency Communications District.  In January 2000, the United States intervened as a

plaintiff, naming Weakley County Emergency Communications District, Weakley County, and

the State of Tennessee as defendants.

C.    **Scope of Consent Order.**  This Consent Order resolves (1) all of Plaintiffs'

claims against Weakley County Emergency Communications District, and (2) all of Plaintiffs'

claims against Weakley County, except for any claims that the United States has asserted or may

assert on behalf of two individuals who applied for deputy sheriff positions with the Weakley

County Sheriff's Department in 1997, whom Weakley County subjected to psychological

evaluation and then declined to hire pursuant to Tenn. Code Ann. §38-8-106 (hereinafter,

"Unresolved Claims").  Any claims relating to these individuals remain outstanding, to be

resolved separately from this Consent Order, either by settlement or litigation.

### Contentions of the Parties

A.    Plaintiffs contend that the Statutory Provisions conflict with, and therefore are

preempted by, the ADA.  Plaintiffs further contend that, because Defendants were obligated to

comply with federal law, Defendants are wholly liable for the actions they took pursuant to the

Statutory Provisions, which violated of Titles I and II of the ADA.

B.    Plaintiffs contend that Defendants violated Titles I and II of the ADA when they

subjected applicants for employment and/or employees to Psychological Testing and when they

applied an Unlawful Employment Qualification Standard.

C.    Plaintiffs contend that, in addition to any other liability, Weakley County is liable

under Titles I and II of the ADA both as an "employer" and as a "public entity" for the

discrimination suffered by the Private Plaintiffs and the other employees of Weakley County

Emergency Communications District.

D.    Plaintiffs contend that when the Private Plaintiffs were subjected to Psychological

Testing, they were misclassified as having a "mental disorder," when in fact they do not have

any mental condition or impairment, and are and always have been fully capable of safely performing the position of emergency 9-1-1 dispatcher.

E.      Defendant Weakley County Emergency Communications District contends that the Private Plaintiffs were evaluated pursuant to Tenn. Code Ann. § 7-86-201. The Private Plaintiffs were diagnosed as not being free from an apparent mental disorder. Due to Ms. Nored being diagnosed as being subject to "emotional instability" and Ms. Shafer being diagnosed as being "overly reactive" and at risk of "impulse control difficulties," the Emergency Communications Board thoroughly discussed the impact of these diagnoses and sought advice from the county attorney and independent counsel. Upon review of the statute and the opinions issued by counsel, the Emergency Communications Board made the determination that, as a result of the diagnoses, the Private Plaintiffs did not meet the qualifications of an emergency dispatcher as set forth in Tenn. Code Ann. § 7-86-201, and terminated their employment.

F.      Defendant Weakley County Emergency Communications District contends that the Private Plaintiffs and all employees were treated fairly and reasonably. The Private Plaintiffs were terminated only after the Emergency Communications Board sought advice from counsel, and considered all the circumstances regarding the diagnoses of the Private Plaintiffs. Based upon concerns for the public's safety and pursuant to state law, the Emergency Communications Board had no other alternative than to terminate the Private Plaintiffs' employment as emergency dispatchers.

G.      Defendant Weakley County Emergency Communications District contends that the Private Plaintiffs were not disabled, nor regarded as disabled, as defined by the ADA, and therefore, the termination of the Private Plaintiffs' employment was not a violation of the ADA.

H.      Defendant Weakley County Emergency Communications District contends that

Page 5 of 28

the psychological evaluation in controversy was job-related and consistent with business necessity for the position of an emergency safety dispatcher.

I.      Defendant Weakley County Emergency Communications District contends that it did not discriminate against the Private Plaintiffs, nor as to any other employee.

J.      Defendant Weakley County Emergency Communications District contends that at the time the parties agreed to resolve their differences, there was a Motion to Dismiss pending before the Court on behalf of the Defendants. The Defendants contend that the Motion to Dismiss was meritorious and would have been successful, but in an effort to limit the costs of a defense and to limit any potential exposure, entered into this agreement to resolve the Parties' differences.

K.      Defendant Weakley County contends that the positions and contentions of the Weakley County Emergency Communications District set forth above in *Contentions of the Parties*, paragraphs E through J, are accurate and correct. Weakley County accordingly adopts these contentions.

L.      Defendant Weakley County contends that it is not an employer of the Private Plaintiffs for any purpose and that it has no control of or over the Weakley County Emergency Communications District, which is an independent entity governed, controlled and operated by its own board.

M.      Defendant Weakley County contends that it has not discriminated against any of its employees including, but not limited to, the two applicants for the position of deputy sheriff referred to in paragraph C under *Background*, above.

N.      Defendants contend that any and all of the psychological testing or evaluations they have had done or will have done, are lawful and not in violation of the ADA regardless of

the validity or literal language of the Statutory Provisions.

O.      Defendants contend that the ADA only applies to and provides protection for persons with disabilities as defined in the ADA and further contends that they have in no way violated the ADA or any lawful regulations pursuant thereto.

P.      Defendants contend that the instant suit is not well taken and that the claims of the Plaintiffs are not meritorious and would not be successful in trial. Weakley County has entered this Consent Order as part of a compromise and settlement in order to limit the costs of litigation. Defendants' entry into this Consent Order is not, and should not be construed, as an admission of any liability of any nature whatsoever.

**WHEREFORE**, the Parties hereby agree and stipulate to the Court's entry of this Consent Order and Final Judgment, which provides as follows.

1.      **Definitions.** The Parties agree and stipulate that certain terms shall be defined for purposes of this Consent Order:

(a)      **"Adverse Employment Actions"** include any hiring or employment decision or action that adversely affects the terms and conditions of an individual's employment or potential employment, including, but not limited to:  failure to hire, termination (including constructive discharge), demotion, involuntary transfer or reassignment, denial of Reasonable Accommodation, harassment, differential treatment, loss of salary or benefits, unsatisfactory performance evaluation, or negative employment reference(s).

(b)      **"Conditional Offer"** shall mean and refer to a *bona fide* offer of employment that is contingent only upon the applicant successfully passing a subsequent medical and/or psychological examination.  A job offer is not *bona fide* for this purpose unless

the employer has already evaluated all relevant non-medical information which, from a practical and legal perspective, could reasonably have been analyzed prior to extending the offer.

(c)     **"Covered Positions"** shall mean and refer to all employment positions for which Defendants have conditioned or will condition hiring or employment on Psychological Review, Psychological Testing or Psychological Evaluation.  These positions include, but are not limited to, those positions which are subject to the requirements of the State Statutes (including public safety dispatcher, police officer, sheriff, correctional officer, and youth services officer).

(d)     **"Direct Threat"** shall mean and refer to a significant risk of substantial harm to the health or safety of others that cannot be eliminated or reduced by Reasonable Accommodation.  The determination that an individual poses a Direct Threat shall be based on an Individualized Assessment of the individual's present ability to safely perform the Essential Functions of the job, with or without a Reasonable Accommodation.  This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.  In determining whether an individual would pose a Direct Threat, the factors to be considered include: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm.

(e)     **"Disability"** shall mean and refer to the term "disability" as defined in Title I of the ADA, 42 U.S.C. § 12102(2) and its implementing regulation, 29 C.F.R. 1630.2(g).

(f)     **"Essential Functions"** shall mean and refer to the fundamental, essential duties of a position as distinguished from the marginal duties of a position.  A function is essential if the position exists for the purpose of performing that function, and/or if the function

is highly specialized and the person has been hired for his or her expertise or ability in performing that function. By contrast, a marginal duty is one that can be eliminated, modified or reassigned without changing the fundamental nature of the position. The determination as to whether an individual can perform the Essential Functions of a position shall be based on an Individualized Assessment of the individual's present ability to perform the Essential Functions of the job, with or without a Reasonable Accommodation.

(g) **"Individualized Assessment"** shall mean and refer to the case-by-case, individualized assessment an employer shall make with respect to whether, with or without a Reasonable Accommodation, a given applicant or employee poses a Direct Threat or is able to perform the Essential Functions of a position. In conducting an Individualized Assessment of a specific applicant or employee, the employer must consider all relevant information, including, but not limited to, input from the individual in question, the individual's experience performing the position in question or a similar position, the opinions of physicians, psychologists and other professionals who have expertise with respect to the condition involved, and/or direct knowledge about the individual's ability to perform. This assessment cannot be based on unfounded assumptions, fears or stereotypes about the nature or effect of a Disability or Disability generally. Before an employer takes an Adverse Employment Action against any applicant or employee on the ground that they pose a Direct Threat or are unable to perform the Essential Functions of a position, it shall advise the person of the specific reasons for the proposed Action, including the particular Essential Functions which the employer has determined that the individual is unable to perform or to perform safely.

(h) **"Individuals Subjected to Psychological Review"** shall mean and refer

to any applicants for employment or current or former employees who, during the period

between July 26, 1990 and the Effective Date of this Consent Order, were subjected to

Psychological Review by either or both Defendants (or any agency or instrumentality of either or

both Defendants), or who resigned or voluntarily transferred in lieu of being subjected to

Psychological Review.

      (i)      **"Individuals Subjected to Adverse Employment Actions"** shall mean

and refer to any applicants for employment or current or former employees who, between July

26, 1990 and the Effective Date of this Consent Order, were subjected to an Adverse

Employment Action by either or both Defendants (or any agency or instrumentality of either or

both Defendants) pursuant to any of the Statutory Provisions, or on the basis of Psychological

Review, an Unlawful Employment Qualification Standard, or any Mental Disorder.

      (j)      **"Mental Disorder"** shall mean and refer to any of the following: an

"apparent mental disorder listed in the DSM [any edition]," or any mental, emotional or

psychological disorder, condition, characteristic, impairment, Disability, trait, or illness.

      (k)      **"Psychological Evaluation"** shall mean and refer to any testing,

examination, screening, interviewing, or other procedure of whatever kind that is used to

determine if an individual, with or without a Reasonable Accommodation, can perform the

Essential Functions of a position or poses a Direct Threat, and which is otherwise conducted in

compliance with the ADA.

      (l)      **"Psychological Review"** shall mean and refer to any testing, examination,

screening, interviewing, or other procedure that Defendants have used, employed or conducted

to evaluate the psychological condition of applicants or employees during the period between

July 26, 1990 and the Effective Date of this Consent Order.

(m)   **"Psychological Testing"** shall mean and refer to any testing, examination, screening, interviewing, or other procedure of whatever kind that is not conducted in compliance with the ADA, including, but not limited to, testing used to determine whether an individual has any Mental Disorder, testing conducted pursuant to the Statutory Provisions, and/or testing used for the purpose of implementing an Unlawful Employment Qualification Standard.

(n)   **"Reasonable Accommodation"** shall mean and refer to any modifications or adjustments to a job application process, a work environment, or the manner or circumstances under which a position is customarily performed, that enable a person with a Disability to be considered for a position, to perform the Essential Functions of a position, or to enjoy equal benefits and privileges of employment, or that will reduce or eliminate any Direct Threat, including, but not limited to, job restructuring, part-time or modified work schedules, reassignment to a vacant position, appropriate adjustment or modifications of examinations, training materials or policies, and other similar accommodations for individuals with Disabilities.  To determine whether a Reasonable Accommodation is available for a person with a Disability, the employer must conduct an Individualized Assessment and, for the purpose of selecting an appropriate Accommodation, may need to initiate an informal, interactive process.

(o)   **"State Statutes"** shall mean and refer collectively to the following sections of the Tennessee Code Annotated:

(1)   Tenn. Code Ann. §7-86-201 (relating to qualification standards for public safety dispatchers);

(2)   Tenn. Code Ann. §38-8-106 and §38-8-104 (relating to qualification standards for police officers);

(3)   Tenn. Code Ann. §8-8-102 (relating to qualification standards for

sheriffs);

(4)     Tenn. Code Ann. §41-1-116 (relating to qualification standards for correctional officers); and

(5)     Tenn. Code Ann. §37-5-117 (relating to qualification standards for youth service officers).

(p)     **"Statutory Provisions"** shall mean and refer collectively to the following specific provisions of the State Statutes:

(1)     Tenn. Code Ann. §7-86-201(b)(9) (requiring public safety dispatchers to "[b]e free of all apparent mental disorders as described in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association...[and] certified as meeting these criteria by a qualified professional in the psychiatric or psychological fields");

(2)     Tenn. Code Ann. §38-8-106(9) (requiring police officers to "[b]e free of all apparent mental disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition (DSM-III) of the American Psychiatric Association...[and] certified as meeting these criteria by a qualified professional in the psychiatric or psychological field");

(3)     Tenn. Code Ann. §38-8-104 (authorizing exceptions to the standards for police officers listed in §38-8-106, "except that no waiver or exception shall be granted for...mental illness");

(4)   Tenn. Code Ann. §8-8-102(a)(7) (requiring sheriffs to "[h]ave

been certified by a qualified professional in the psychiatric fields

to be free of all apparent mental disorders as described in the

Diagnostic and Statistical Manual of Mental Disorders, Third

Edition (DSM-III), or its successor, of the American Psychiatric

Association");

(5)   Tenn. Code Ann. §41-1-116(7) (requiring correctional officers to

"[b]e free from all apparent mental disorders...[and] certified as

meeting this criterion by a qualified professional in the psychiatric

or psychological fields"); and

(6)   Tenn. Code Ann. §37-5-117(6) (requiring youth service officers to

"[b]e free from all apparent mental disorders...[and] certified as

meeting this criterion by a qualified professional in the psychiatric

or psychological fields").

(q)   **"Unlawful Employment Qualification Standard"** shall mean and refer

to any employment qualification standard, test or selection criterion that screens out or tends to

screen out an individual with a Disability or a class of individuals with Disabilities that is not

job-related and consistent with business necessity, including but not limited to the requirement

that persons "be free of any apparent mental disorders listed in the [DSM-any edition]."

(r)   **"Unresolved Claims"** shall mean and refer to any claims that the United

States has asserted or may assert against Weakley County on behalf of two individuals who

applied for deputy sheriff positions with the Weakley County Sheriff's Department in 1997,

whom Weakley County subjected to Psychological Review and then declined to hire pursuant to

Tenn. Code Ann. §38-8-106.

2.     **Representations By Defendants.** The Parties agree that Plaintiffs' stipulation to the terms of this Consent Order is contingent upon the accuracy of the following representations, all of which refer to the time period between July 26, 1990 and the Effective Date of this Consent Order. If any of these representations are inaccurate, and there are additional individuals who, pursuant to the Statutory Provisions or on any other basis, have been subjected to Psychological Review and/or an Adverse Employment Action on the basis of Psychological Review, an Unlawful Employment Qualification Standard, or any Mental Disorder, the Department shall have the right to assert claims for relief on its own and on their behalf. Should the Department subsequently assert the claims described in this paragraph numbered 2, nothing contained in this Consent Order shall be considered or construed as an admission or agreement on the part of Weakley County or Weakley County Emergency Communications District that any such act constitutes a violation of any law.

A.     **Psychological Review**

1.     **Pre-offer applicants for employment.**

(a)     Defendants Weakley County and Weakley County Emergency Communications District each represent that they have not subjected any applicants for employment to Psychological Review prior to making a Conditional Offer of employment.

2.     **Post-offer applicants for employment.**

(a)     Defendants Weakley County and Weakley County Emergency Communications District each represent that

Page 14 of 28

they have not subjected any applicants for employment to

Psychological Review following a Conditional Offer of

employment, with the following sole exception:

    (1)    Defendant Weakley County has subjected as many

    as, but no more than, twenty-one (21) post-offer

    applicants for the position of deputy sheriff to

    Psychological Review.

3.    **Current or former employees.**

    (a)    Defendants Weakley County and Weakley County

    Emergency Communications District each represent that

    they have not subjected any current or former employees to

    Psychological Review, with the following sole exception:

        (1)    In addition to the Private Plaintiffs, Defendant

        Weakley County Emergency Communications

        District has subjected to Psychological Review as

        many as, but no more than, five (5) other employees

        (hereinafter and collectively, "Other 9-1-1

        Dispatchers Subjected to Psychological Review").

B.    **Adverse Employment Actions.**

1.    Defendants Weakley County and Weakley County Emergency

    Communications District each represent that they have not

    subjected any applicants for employment or current or former

    employees to any Adverse Employment Actions pursuant to any of

the Statutory Provisions, or on the basis of Psychological Review, an Unlawful Employment Qualification Standard, or any Mental Disorder, with the following exceptions:

    (a)    Defendant Weakley County Emergency Communications District terminated the Private Plaintiffs from their positions as emergency 9-1-1 dispatchers.

    (b)    Defendant Weakley County declined to hire two (2) applicants for deputy sheriff positions.

3.    **Basis of Termination.**  The Parties agree and stipulate that the Private Plaintiffs were terminated pursuant to Tenn. Code Ann. § 7-86-102.

4.    **Payment.**  Within five (5) business days of the Effective Date of this Consent Order, Weakley County Emergency Communications District shall hand-deliver to The Gilbert Firm a check for Seventy Thousand Dollars and No Cents ($70,000.00), payable to the order of The Gilbert Firm Client Trust Account ("Fund"). The Fund shall be distributed in the following manner:

    (a)    Within ten (10) business days following the Effective Date of this Consent Order, the Private Plaintiffs shall execute a release of claims in the form attached as Exhibit A and hand-deliver it to Defendant Weakley County Emergency Communications District. Following their execution of the release, Sixty-Eight Thousand Dollars and No Cents ($68,000.00) shall be disbursed from the Fund to the Private Plaintiffs, Twenty Thousand Dollars and No Cents ($20,000.00) of which shall constitute payment of attorneys fees to The Gilbert Firm.

Page 16 of 28

(b)     In exchange for a full and final release of any legal claims against either or both Defendants relating to the Psychological Review, the Department will offer, in addition to expungement of all records relating to Psychological Review, Four Hundred Dollars and No Cents ($400.00) to each of the Other 9-1-1 Dispatchers Subjected to Psychological Review ("Offer").  Should any of them decline to accept this Offer, the amount offered to them will revert to the Fund.

(c)     Any amount remaining in or reverting to the Fund will be divided equally between the Private Plaintiffs.

5.     **Reporting.** Within ten (10) business days of the Effective Date of this Consent Order, each Defendant shall file with the Court and serve upon the Department the following information, which shall be certified in accordance with the provisions of 28 U.S.C. §1746:

A.     A list of Individuals Subjected to Psychological Review, identifying their names, current addresses and telephone numbers (if known or reasonably obtainable), positions, dates of employment, dates tested, and results of the tests.

B.     A list of Individuals Subjected to Adverse Employment Actions, identifying their names, current addresses and telephone numbers (if known or reasonably obtainable), positions, dates of employment, adverse actions taken, and dates taken.

6.     **Relief for Certain Other Employees.** Within thirty (30) business days of the Effective Date of this Consent Order, and after sending a copy to the Weakley County Emergency Communications District, the Department will send a written notice by certified

Page 17 of 28

mail, return receipt requested, to the Other 9-1-1 Dispatchers Subjected to Psychological

Review. This notice shall explain the terms of this Consent Order and convey the Offer. If the

Offer is accepted, the Department will obtain a signed release from the individual, arrange for

the disbursement of funds, and promptly notify Defendants of the acceptance of the Offer by

forwarding a copy of the release.

7.     **Expungement of Records.**  Within thirty (30) days of the Effective Date of this

Consent Order, Defendants will completely expunge all records relating to the Psychological

Review of all Individuals Subjected to Psychological Review currently in their possession or

control, and will make their best reasonable effort to expunge all such records not currently in

their possession or control, by obtaining and forwarding such records to the Department. If any

Individual Subjected to Psychological Review subsequently requests a copy of the expunged

records, Defendants shall refer the individual to the Department.

8.     **Employment References.**  Should Weakley County Emergency Communications

District receive an employment-related inquiry or request for an employment reference

concerning either of the Private Plaintiffs, all such requests and inquiries will be referred to Mike

Wilson, currently employed as Sheriff of Weakley County.

9.     **Agreement Not to Adopt or Implement Unlawful Employment Qualification

Standards.**  Defendants and their agents and instrumentalities are permanently enjoined from

adopting or implementing any Unlawful Employment Qualification Standard and from otherwise

discriminating in any manner against persons with Disabilities.

10.     **Agreement Not to Adopt or Implement Psychological Testing.**  Defendants

and their agents and instrumentalities are permanently enjoined from adopting or implementing

any policy, practice or procedure of conducting Psychological Testing.

11.   **Review of Job Descriptions.**  Defendants will create written position descriptions for all Covered Positions which identify the Essential Functions of each position.  If written position descriptions already exist, Defendants will review them to ensure that they clearly identify and distinguish between the Essential Functions and the marginal functions of the position.  The Department will provide technical assistance to Defendants as necessary for this purpose, but will not dictate which specific functions of a given position are Essential Functions.

12.   **Review of Employment Policies and Procedures.**  The Department will review Defendants' employment policies and procedures in the following manner:

A.   Within thirty (30) days of the Effective Date of this Consent Order, Defendants shall revise in accordance with requirements of the ADA and the terms of this Consent Order and submit to the Department for review:

(1)   any and all employment standards, policies and procedures, including, but not limited to, any personnel policies, testing procedures, and laws, regulations or ordinances relating to employment; and

(2)   any and all job descriptions, job qualification standards, and job applications relating or applying to the Covered Positions.

B.   Within ninety (90) days of its receipt of these policies and procedures, the Department shall provide written notice to Defendants of any issues or concerns it has identified with respect to the compliance of such policies and procedures with the ADA.

C.   Within thirty (30) days of their receipt of the Department's notice of issues or concerns with respect to ADA compliance, Defendants shall either:

(1)    implement the advice given by the Department, and provide written notice of such implementation to the Department along with copies of the amended policies or procedures; or

(2)    submit to the Department a written statement describing in detail the factual and legal basis for their belief that the ADA does not require them to implement the advice.

D.    Within thirty (30) days of its receipt of Defendants' statement opposing implementation of the advice, the Department shall provide a written response.

E.    Within thirty (30) days of their receipt of the Department's written response, Defendants shall either:

(1)    implement the advice given by the Department (as modified by the response), and (if applicable) provide written notice of such implementation to the Department along with copies of the amended policies or procedures; or

(2)    initiate private mediation in accordance with section 19 of this Consent Order.

13.    **Psychological Evaluation.**  If Defendants elect to subject applicants for employment and/or current employees to Psychological Evaluation, Defendants will establish and follow a written procedure which complies with all requirements of the ADA, including the following specific provisions relating to medical examinations and inquiries:

A.    Before Defendants make a Conditional Offer of employment, Defendants may not subject any applicants for employment to Psychological Evaluation.  Defendants may not make inquiries that would tend to elicit

information about any Mental Disorder.

B.    After a Conditional Offer of employment has been made but prior to the commencement of employment, Defendants may subject applicants to Psychological Evaluation only if such testing is strictly limited to the determination by Individualized Assessment of whether the individual, with or without a Reasonable Accommodation, (a) is able to perform the Essential Functions of the position in question or (b) poses a Direct Threat.

C.    With respect to current employees, Defendants may not adopt or implement any policy or practice of subjecting employees to Psychological Evaluation as a condition of continued employment. With respect to individual employees, employers may not subject an employee to Psychological Evaluation unless reliable, objective and current evidence indicates that the individual, with or without a Reasonable Accommodation, (a) is unable to perform the Essential Functions of his or her job or (b) poses a Direct Threat. Any Psychological Evaluation that is conducted on this basis must remain strictly limited to the determination by Individualized Assessment of whether the individual, with or without a Reasonable Accommodation, (a) is able to perform the Essential Functions of the position in question or (b) poses a Direct Threat.

D.    Any records relating to Psychological Evaluation must be maintained separately from the applicant or employee's personnel file and must be treated as a confidential medical record.

Page 21 of 28

14.     **Non-Discrimination Policy.** During the term of this Consent Order, Defendants will post in their workplaces and include in every new job vacancy announcement a statement describing their policy not to discriminate on the basis of physical or mental Disability.

15.     **Non-Retaliation.** Defendants will not retaliate against any person based on their participation or involvement in this litigation or the terms of this Consent Decree, or retaliate in any other way that violates the ADA.

16.     **Release.** Except as otherwise specified in this Consent Order, the Department will take no further legal action against Defendants with respect to, and fully and finally releases Defendants from any and all liability arising from or relating to, any claims that, as of the Effective Date of this Consent Order, were raised, or could have, should have, or would have been properly raised, by the United States in this action, including claims that the United States asserted or could have asserted on behalf of applicants for employment or employees. Claims that could have, should have, or would have been properly raised by the United States in this action are limited to those arising under Titles I and II of the ADA that specifically relate to Psychological Review and/or Adverse Employment Actions taken on the basis of Psychological Review or an Unlawful Employment Qualification Standard relating to Mental Disorders. This release is contingent upon the accuracy of the Representations made by Defendants, as set out in section 2 of this Consent Order, and does not release Weakley County or in any way limit legal action by the Department with respect to the Unresolved Claims.

17.     **Monitoring.** The Department will monitor Defendants' compliance with the Consent Order in the following manner:

> A.     Ninety (90) days from the Effective Date of this Consent Order, and every ninety (90) days thereafter during the term of this Consent Order,

Defendants will submit to the Department a written status report that addresses the following matters:

(1) any adoption or revision of policies or procedures relating to employment, including any of the items referred to in section 12 of this Consent Order; and

(2) all Psychological Evaluations conducted, including copies of all reports, with names of tested individuals redacted.

B. Within ten (10) business days of the occurrence of any of the following events, Defendants shall submit written notice of the occurrence to the Department, along with a narrative description of the event and any and all records relating to the event:

(1) receipt of a complaint from any individual relating to Psychological Review, Psychological Testing, Psychological Evaluation or discrimination on the basis of Mental Disorder;

(2) decisions not to hire an applicant in which the results of Psychological Review, Psychological Testing or Psychological Evaluation were considered;

(3) decisions to subject any employee to Psychological Evaluation and any actions taken in reliance on such Psychological Evaluation.

C. The Department will have the right to audit the Defendants' records at any time to ensure compliance.

18. **Records Subject to Audit.** Defendants shall maintain records reflecting the performance of their obligations under this Consent Order. Such records shall be maintained in

sufficient detail to permit the Department to verify that all acts required of Defendants by this Consent Order are actually performed.

19.   **Dispute Resolution.**  If any Party notifies the other Parties in writing of a dispute over the performance of this Consent Order, the Parties agree to negotiate in an effort to resolve the dispute between themselves.  If they are unable to resolve the dispute directly within fifteen (15) days of receipt of notification of a dispute, they agree to participate in mediation with Allen S. Blair or another mediator mutually agreed upon by the parties.  Unless otherwise agreed by the parties, the mediation shall be completed within sixty (60) days of the receipt of the first notification under this section.  The Parties agree to share the costs of mediation equally.  No party shall bring an action to enforce the Consent Order without first complying with this section.

20.   **Civil Action to Enforce Consent Order.**  Any civil action to enforce this Consent Order shall be filed in the United States District Court for the Western District of Tennessee, Eastern Division at Jackson.  In a civil action to enforce this Consent Order, either party may seek any appropriate relief, including an adjudication of contempt.  In addition, the United States may seek relief under any applicable provision of Titles I and II of the ADA, including, but not limited to, appropriate compensation for Individuals Subjected to Psychological Review or Individuals Subjected to Adverse Employment Actions in violation of the terms of this Consent Order.

21.   **Agreement to Cooperate.**  As a party or an *amicus curiae*, Defendants will not take any position contrary to the United States' position in this litigation with respect to claims raised by the United States against the State of Tennessee.

22.   **Application.**  This Consent Order is final and binding on, and enforceable

Page 24 of 28

against, the Parties and their officials, agents, contractors, employees and successors in interest.

23.    **Retention of Jurisdiction.**  For the purpose of enforcing the Consent Order, the Court retains jurisdiction over this action for three (3) years from the Effective Date of the Consent Order.  After three (3) years, the matter shall be dismissed unless the United States makes an appropriate motion before that time showing circumstances that warrant the Court's retention of jurisdiction and continuation of the injunctive provisions of the Consent Order, and such motion is granted.

24.    **Entire Consent Order.**  This Consent Order constitutes the entire agreement between the Parties with respect to the matters addressed herein, with the exception of the Unresolved Claims.  The Parties agree that the entry of this Consent Order does not resolve any of the United States' claims against the State of Tennessee.

25.    **Severability.**  If any term of this Consent Order is determined by any court to be unenforceable, the other terms of this Consent Order shall nonetheless remain in full force and effect.

26.    **Public Document.**  This Consent Order is a public document.  Copies of this Consent Order shall be made available to any person by the Department or the Defendants upon request to that party.

27.    **Titles.**  The titles used in this Consent Order are intended solely to facilitate ease of use and reference by the Parties and shall not be construed to have substantive effect on, modify, or alter the terms of the Consent Order.

28.    **Notices and Reports.**  All notices and reports required by this Consent Order shall be sent to the Parties at the following addresses or at such other address as the Parties may designate in writing in the future:

A.     Notices to the Department:

John L. Wodatch, Chief
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
1425 New York Avenue, N.W., Room 4039
P.O. Box 66738
Washington, D.C. 20035-6738

B.     Notices to the Private Plaintiffs:

Justin S. Gilbert, Esq.
The Gilbert Firm
300 E. Main Street, Suite 200
P.O. Box 2384
Jackson, TN 38302-2384

C.     Notices to Defendant Weakley County:

Ron Gifford
County Executive
Weakley County Courthouse
Dresden, TN 38225

D.     Notices to Defendant Weakley County Emergency Communications
District:

David McAlpin
Weakley County Emergency Communications District
P.O. Box 911
Dresden, TN 38225-0911

29.     **Term.** The term of the Consent Order shall be three (3) years from its Effective
Date, at which time the Consent Order will terminate. Sections 1, 2, 8, 9, 10, 15, 16, 17(C), 18,
20, 21 and 22 shall survive the termination of this Consent Order.

30.     **Effective Date.** This Consent Order is effective as of the date it is entered by the
Court ("Effective Date").

It is so ORDERED.

Page 26 of 28

DATED this 30<u>th</u> day of January, 2001.

BY THE COURT:

_U.S. District Judge James D. Todd_

CONSENT ORDER APPROVED BY:

BILL LANN LEE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
JOHN L. WODATCH
Chief
RENEE M. WOHLENHAUS
Deputy Chief
Disability Rights Section


_____
M. CHRISTINE FOTOPULOS
Disability Rights Section
U.S. Department of Justice
P.O. Box 66738
Washington, D.C.  20035-6738
(202) 305-7475

Attorneys for Plaintiff United States


_____
JUSTIN S. GILBERT
The Gilbert Firm
300 E. Main Street, Suite 200
P.O. Box 2384
Jackson, TN 38302-2384
(901) 427-0032

Attorney for Private Plaintiffs


_____
JAMES I. PENTECOST
ANDREW V. SELLERS
Waldrop & Hall
P.O. Box 726
Jackson, TN 38302-0726

Attorneys for Weakley County and
Weakley County Emergency
Communications District


_____
WILLIAM R. NEESE
Neese, Herron & Miller-Herron
P.O. Box 5
Dresden, TN 38225

Attorney for Weakley County


Page 28 of 28

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 44 in case 1:98-CV-01357 was distributed by fax, mail, or direct printing on January 31, 2001 to the parties listed.

---

Justin Gilbert
THE GILBERT FIRM
P.O. Box 2384
300 E. Main
Ste. 200
Jackson, TN 38302

James I. Pentecost
WALDROP & HALL
P.O. Box 726
106 S. Liberty Street
Jackson, TN 38302

Andrew V. Sellers
WALDROP & HALL
106 S. Liberty Street
P.O. Box 726
Jackson, TN 38302

Bill Lann Lee
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

John L. Wodatch
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

M. Christine Fotopulos
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

Renee M. Wohlenhaus
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

Jeanine M. Worden
U.S. Department of Justice
Civil Rights Div/Dis
P.O. Box 66738
Washington, DC 20035

Kevin Steiling
STATE ATTORNEY GENERAL'S OFFICE
Civil Litigation and
425 Fifth Ave., North
Nashville, TN 37243

Honorable James Todd
US DISTRICT COURT